**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ALBERT ROBERTSON. JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:24-cv-02656-TLP-cgc |
| v. | ) | |
| | ) | JURY DEMAND |
| MEMPHIS BASKETBALL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER MODIFYING REPORT AND RECOMMENDATION AND DISMISSING CASE**

Pro se Plaintiff Albert Robertson, Jr. sued Defendant Memphis Basketball, LLC ("Grizzlies") under the Age Discrimination in Employment Act ("ADEA") and Title VII ("Title VII"), alleging unlawful discharge, unequal terms and conditions, and retaliation. (ECF No. 1.) Because Plaintiff is pro se, the Court referred the case to Magistrate Judge Charmiane G. Claxton. *See* Admin. Order 2013-05. The Grizzlies later moved to dismiss. (ECF Nos. 9, 10.) This Court dismissed Plaintiff's claims for unlawful discharge and unequal terms and conditions. (ECF No. 16.) But the Court found that Plaintiff's retaliation claim was a close call, so it directed him to amend that claim. (*Id.*) Plaintiff timely amended his Complaint. (ECF No. 17.) The Court again referred the case to Judge Claxton. (ECF No. 18.) The Grizzlies now move to dismiss the retaliation claim. (ECF No. 20.) Judge Claxton issued a Report and Recommendation ("R&R") recommending that the Court grant the Motion. (ECF No. 29.) Plaintiff objected. (ECF No. 30.) For the reasons below, the Court **MODIFIES** Judge Claxton's R&R, **GRANTS** the Grizzlies' Motion to Dismiss, and **DISMISSES** this case **WITH PREJUDICE**.

**BACKGROUND AND THE R&R**

The Court explained the relevant facts in its September 15, 2025, Order. (ECF No. 16 at PageID 52–54.) So it keeps the factual background short this time.

Plaintiff is an African American man. (*Id.*) The Grizzlies employed him for about sixteen years before a car accident in January 2020 prevented him from working for the rest of the basketball season. (*Id.*; ECF No. 1 at PageID 5.) Plaintiff lost his lost his tenure when he returned to work in September 2021. (ECF No. 16 at PageID 52–54.) A few years later, Plaintiff told the Grizzlies that he would "be reporting" them to the Tennessee Human Rights Commission ("THRC") and the Equal Employment Opportunity Commission ("EEOC"). (*Id.*) Plaintiff alleges that the Grizzlies reduced his work hours in response. (*Id.*) He sued here under the ADEA and Title VII for unlawful discrimination, unequal terms and conditions, and retaliation. (ECF No. 1.)

On the Grizzlies Motion, the Court dismissed all Plaintiff's claims except for Title VII retaliation. (ECF No. 16.) The Court reasoned that the retaliation claim was a close call but ultimately failed to state a claim. (*Id.* at PageID 64.) That was because when "taking the complaint as it is written, Plaintiff had been working reduced hours long before he engaged in protected activity." (*Id.* at PageID 63.) In other words, Plaintiff failed to plead a connection between a protected activity—threatening to file a charge with the EEOC—and adverse action—reduced work hours. (*See id.*) Rather than dismissing that claim, however, the Court directed Plaintiff to amend his Complaint. (*Id.* at PageID 64.)

Plaintiff's response to that Order alleged more facts about his termination.

> In the months of September and October 2023, no confirmation of employment for First Student Management LLC, 191 Rosa Parks Street, 8th Floor, Cincinnati OH 4-5202, could be verified for possible employment from Memphis Grizzlies.

> A request to review information placed in employment records by· me concerning this matter was denied.
> The Forum held 80–90 Events for the year of 2024–2025 and according to job description in the employee handbook (page 29) "Availability to work at least 80% of scheduled arena events, including evenings, weekends, and holidays". I was available to work but only scheduled for 9 events. Please note in previous years, I have always worked over 80% of scheduled arena events, every year.
> The counsel states in his motion that Paula Richmond made an error which led Human Resources to terminate; however, the error was not mine and why my years of service were erased.
> Lastly, statute of limitation would not have been an issue had Paula Richmond been forthcoming regarding my termination. I was not aware that my years of service had been erased, and I had been permanently terminated until I applied for a job at Rhodes College.

(ECF No. 17 at PageID 65–66.)

The Grizzlies now move to dismiss the retaliation claim, arguing that the Amended Complaint "fails to allege any protected activity taken by Plaintiff." (ECF No. 20-1 at PageID 75.) Plaintiff opposes the Motion (ECF No. 21), and the Grizzlies replied (ECF No. 22). Judge Claxton agreed with the Grizzlies and issued an R&R recommending that the Court dismiss the claim for three reasons. (ECF No. 29.) First, "Plaintiff did not file an amended pleading but instead filed a response with factual allegations therein." (*Id.* at PageID 100.) Second, Plaintiff failed to timely respond to the Motion. (*Id.*) And finally, "this filing contains no reference to any protected activity whatsoever. Absent any allegation of protected activity therein, the Court is unable to conclude that the remaining allegations are sufficient to plead that Memphis Basketball took any adverse actions against Plaintiff based upon protected activity." (*Id.*) Plaintiff timely objected to the R&R. (ECF No. 30.)

## STANDARD OF REVIEW AND OBJECTIONS

A magistrate judge may submit to a district court judge proposed findings of fact and a recommended ruling on certain dispositive pretrial matters, including motions to dismiss. *See* 28 U.S.C. § 636(b)(1)(A)–(B). The parties can object to those findings and recommendations. Fed.

R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]" and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b)(3). If neither party objects, then the district court reviews the R&R for clear error. Fed. R. Civ. P. 72(b) advisory committee's note. But if there is an objection, the district court reviews the "properly" objected-to portions of the R&R de novo. Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1).

## I. Plaintiff's Objections

Plaintiff makes three timely objections to the R&R. (ECF No. 30.) The Court begins with his last two—"Objection to the Finding That Plaintiff Failed to Amend His Complaint" and "Objection Based Upon the Interests of Justice"—which both relate to the R&R's finding that he failed to properly amend his Complaint. (*Id.* at PageID 102–03; *see* ECF No. 29 at PageID 100 (recommending dismissal because "Plaintiff did not file an amended pleading but instead filed a response with factual allegations therein.").) These two objections are well taken. As this Court noted when it referred this case back to Judge Claxton, Plaintiff filed a "Notice of Response" rather than an amended complaint. (ECF No. 18.) But "[b]ecause Plaintiff's Notice plead[s] facts related to his retaliation claim, *the Court construes his Notice as amending his Complaint*." (*Id.* (emphasis added).) Because the Court construed the document as an amended complaint, the Court finds that the R&R should not have recommended dismissal based on Plaintiff's failure to file an amended complaint. As explained below, the undersigned caused the confusion by failing to clarify that Plaintiff's "amended complaint" did not replace the original complaint; it supplemented it.

### A. Objection to the Finding That Plaintiff Failed to State a Claim

Plaintiff claims that Judge Claxton erred when she found that the Amended Complaint did not allege facts supporting a Title VII retaliation claim. (ECF No. 30 at PageID 102.) Plaintiff focuses on Judge Claxton's finding that "this filing contains no reference to any protected activity whatsoever." (ECF No. 29 at PageID 100.) And based on that lack of protected activity, the R&R concludes that "the Court is unable to conclude that the remaining allegations are sufficient to plead that Memphis Basketball took any adverse actions against Plaintiff based upon protected activity." (*Id.*)

The R&R is correct that the Amended Complaint does not reference any protected activity. But this conclusion overlooks parts of the record. The Court's ruling on the Grizzlies' first Motion to Dismiss explained that "[t]hreatening to file an EEOC charge can be considered protected activity if the defendant knew that the threatened charge would be based on discrimination." (ECF No. 16 at PageID 61–62.) And here, Plaintiff's original Complaint "*suggests* that Defendant retaliated against him for threatening to bring an EEOC claim—the alleged protected activity—by reducing his work hours." (ECF No. 16 at PageID 62 (emphasis added).)

So on the one hand, the R&R is accurate in that the Amended Complaint itself contains no similar allegation. On the other hand, this Court found that the original Complaint *suggested* a protected activity at the very least. Perhaps Judge Claxton considered this in her ruling. But the R&R reads as if she only considered Plaintiff's later filing. And if Judge Claxton did consider the allegations in the original Complaint and this Court's earlier finding that Plaintiff

likely engaged in a protected activity, she did not offer a basis for why she disagreed. Plaintiff's objection therefore deserves a closer look.

An amended complaint generally "supersedes all previous complaints and controls [the] case from that point forward." *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) (citing *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000)). That is, unless "the party submitting the pleading clearly intended the latter pleading to supplement, rather than supersede, the original pleading." *Clark v. Johnston*, 413 F. App'x 804, 811–12 (6th Cir. 2011) (citation omitted).

There is some nuance to this general rule. Because the Sixth Circuit holds pro se pleadings "to less stringent standards than those prepared by attorneys," *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), "courts have consistently interpreted such pro se filings as addenda to, and not replacements for, the initial complaint." *English v. II Enters.*, No. 19-12463, 2020 WL 32550, at *2 (E.D. Mich. Jan. 2, 2020) (collecting cases); *see Ayers v. City of Memphis, Tenn.*, No. 21-cv-02383-JTF-atc, 2024 WL 4481837, at *2 n.4 (W.D. Tenn. July 30, 2024), *report and recommendation adopted*, 2024 WL 4235733 (W.D. Tenn. Sept. 19, 2024) ("[G]iven Ayers's pro se status, the Court construes his proposed Amended Complaint together with the original Complaint." (collecting cases)); *see generally Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (discussing liberal pleading standards and filings made after a complaint). This is especially true "where circumstances suggest the plaintiff did not intend to abandon their initial complaint." *Essak v. Sosnowski*, No. 25-11470, 2025 WL 2845611, at *2 (E.D. Mich. Oct. 7, 2025) (citations omitted).

The circumstances here indicate that Plaintiff intended his Amended Complaint to supplement the allegations in his original Complaint. It is true that his amendment does not

reference any previous filings. It is also true that the Court directed him to amend, not supplement, his Complaint. But when read closely, Plaintiff filed his Amended Complaint to elaborate on the deficiencies the Court found in his original Complaint. The amendment states that Plaintiff "clearly understand[s] . . . I did not present the [] Court with my facts" and then provides five bullet points with facts related to "the scope of the order of retaliation." (ECF No. 17 at PageID 65.)

That said, the Court does not fault Judge Claxton for concluding otherwise. In the Order referring this case back to her, the Court only noted that it "construes [Plaintiff's] Notice as amending his Complaint." (ECF No. 18 at Page 68.) And that sentence was buried in a footnote. Given the caselaw on pro se amendments, the Court should have been more direct and stated that it construes Plaintiff's Notice as a *supplement* to his Complaint. Because of this confusion, the Court will next review Plaintiff's filings and the Motion to Dismiss de novo.

**DISPOSITION**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient facts which "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* And in this posture, courts "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in [his] favor." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Despite the liberal pro se pleading standards, courts are not "required to create" or develop a pro se party's claim. *Payne v. Sec'y of Treasury*, 73 F. App'x 836, 837 (6th Cir. 2003) (citations omitted). Plaintiff fails to plead a Title VII retaliation claim for the reasons below.

## I. Analysis

Title VII protects employees from discrimination based on their race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2(a)(1). It also protects employees from retaliation when they oppose an unlawful employment practice or make an EEOC charge. *See id.* at § 2000e-3(a). To establish a prima facie Title VII retaliation claim, a plaintiff must show that (1) he engaged in protected activity; (2) the defendant knew the plaintiff exercised protected activity; (3) the defendant took adverse employment action; and (4) "there was a causal connection between the protected activity and the adverse employment action." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 996 (6th Cir. 2009) (citation omitted). "While a Title VII plaintiff need not establish a prima facie case at the motion to dismiss stage, courts have looked to the prima facie requirements when determining whether a Title VII plaintiff has pleaded an actionable claim." *Towns v. Memphis/Shelby Cnty. Health Dep't*, No. 17-cv-02626-SHM-tmp, 2019 WL 639050 (W.D. Tenn. Jan. 25, 2019), *report and recommendation adopted*, 2019 WL 639025 (W.D. Tenn. Feb. 14, 2019) (collecting cases).

The Grizzlies' briefing focuses on the first element—protected activity—and the fourth element—causation. The factual allegations below relate to these two elements.

The Grizzlies "termed" Plaintiff in January 2020 after learning that he had been in a car accident and could not work for the rest of the season. (ECF No. 1 at PageID 5.) When Plaintiff returned to work the following Fall, a Grizzlies employee told him that he would have to reapply for the job. (*Id.* at PageID 6.) Plaintiff spoke to his direct supervisor who said him this was an error. (*Id.*) But then she asked him to reapply anyway, and Plaintiff followed her instructions. (*Id.*)

In early 2023 Plaintiff applied for a security position at Rhodes College ("Rhodes"). (*Id.*) He wanted to work full-time at Rhodes while keeping his "part-time job with the Memphis Grizzlies." (*Id.*) But Rhodes rejected Plaintiff's application. (*Id.*) That was because he listed 2004 as his start date with the Grizzlies even though his employment records showed that he did not start working for them until 2021. (*Id.*) Rhodes found Plaintiff's application "inadequate" based on the conflicting start dates. (*Id.*)

Plaintiff contacted the Grizzlies' HR Department about this discrepancy. (*Id.*) He claims HR had "no answers" and began to avoid him. (*Id.*) Plaintiff then told the Grizzlies that he would "be reporting" them to the THRC and the EEOC. (*Id.*) Plaintiff alleges that after this conversation the Grizzlies scheduled him to work fewer events. (*Id.*) But—in the same sentence—he also states that "prior to [his] accident and COVID-19, [he] was working every event except on Wednesday[s] and Sunday[s]." (*Id.*)

As the Court's earlier Order found, this timeline shows that Plaintiff's reduced hours began when he first returned to work in September 2021. (ECF No. 16 at PageID 63.) Because he did not threaten to file an EEOC charge until early 2023, this timeline does not plausibly allege "any causal connection between [Plaintiff's] initiation of the EEO[C] complaint process and the allegedly adverse employment actions taken by [the Grizzlies]." (*Id.*) Plaintiff now states in his Amended Complaint that the Grizzlies reduced his schedule starting in 2024–2025 basketball season. (ECF No. 17 at PageID 66.)

### A. Protected Activity

A plaintiff engages in protected activity when they oppose "any practice that the employee reasonably believes to be a violation of Title VII." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). An employee threatening to file an EEOC charge can be

protected activity if the employer knew that the threatened charge would be based on alleged discrimination. *See, e.g.*, *Mumm v. Charter Twp. of Superior*, 727 F. App'x 110, 113 (6th Cir. 2018). The Grizzlies argues that the Amended Complaint has not alleged any protected activity.[1] (ECF No. 20-1 at PageID 75.) But this argument ignores the allegations in the original Complaint that Plaintiff threatened to file an EEOC charge—arguably a protected activity. (*See* ECF No. 16 at PageID 62–63.) Because the Grizzlies have no other argument to the contrary, the Court thus finds that Plaintiff has satisfied this element.

**B. Causation**

The causation element requires a plaintiff to plausibly allege a connection "between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (citation omitted). This is not a heavy burden at the pleadings stage. *George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). A reduction in work hours can be an adverse action under certain fact patterns. *See Norman v. Rolling Hills Hosp., LLC*, 820 F. Supp. 2d 814, 824 (M.D. Tenn. 2011). So here, Plaintiff must plead that the Grizzlies would not have reduced his work schedule "but for" his EEOC threat. *See Nguyen*, 299 F.3d at 563 (same).

The Grizzlies argue that the Amended Complaint fails to make this connection. (ECF No. 20-1 at PageID 75.) The Court agrees.[2] To be sure, two versions of events are possible when reading the pleadings together. But neither plausibly alleges causation. In the first

---

[1] Plaintiff did not respond to the Grizzlies' Motion to Dismiss for two months. (ECF No. 21.) As the R&R notes, that response is untimely. (ECF No. 29 at PageID 100.) The Court agrees and does not consider that response here.

[2] Because of this, the Court still declines to address the Grizzlies' argument that Plaintiff failed to exhaust his administrative remedies for this claim. (*See* ECF No. 16 at PageID 63 (concluding same).)

version, Plaintiff returned to work in 2021 and "was placed on the schedule approximately once every 2 months." (ECF No. 1 at PageID 6.) This limited schedule continued through February 2023 when he made his EEOC threat and still had a "part-time job with the Memphis Grizzlies." (*Id.*) And the first version also continued through the 2024–2025 basketball season. (ECF No. 16 at PageID 63.) As the Court found when considering the facts in the original Complaint:

> This timeline does not plausibly allege retaliation. All signs point to Plaintiff working fewer days once he returned to work in September 2021. So taking the complaint as it is written, Plaintiff had been working reduced hours long before he engaged in [the 2023] protected activity.

(ECF No. 16 at PageID 63.)

Now consider option two. Plaintiff made his EEOC threat around February 2023 and, in retaliation, the Grizzlies waited over a year-and-a-half until the 2024 basketball season to reduce his work schedule. (*See* ECF No. 17 at PageID 66 (stating that before 2024 he worked "80% of scheduled arena events"). Although a plaintiff can plead a causal link "through knowledge combined with closeness in time that creates an inference of causation," *Johnson*, 215 F.3d at 582, that link weakens when the adverse employment action is not "acutely near in time." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283–84 (6th Cir. 2012) (collecting cases holding that a two-to-three-month gap may be close enough). The time gap under this reading fails to show a causal link between the 2023 protected activity and the 2024 adverse action. *Compare Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir.2006) (finding a causal connection where the employee was placed on leave within the same month that she complained about workplace sexual assaults and then terminated six months later), *with Johnson*, 215 F.3d at 583 (citing *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272–73 (6th Cir. 1986) for the proposition that being terminated four months after filing a discrimination claim does not support causation)).

At bottom, Plaintiff has not plausibly alleged that the Grizzlies reduced his work hours because he threatened them with an EEOC charge. The pleading instead confirms that Plaintiff was either working reduced hours long before his EEOC threat or did not begin working reduced hours until long after the threat. Either way, Plaintiff has failed to state a retaliation claim under these facts.[3]

## II. The Court Will Not Grant Leave to File a Second Amended Complaint

One final matter remains. Plaintiff asks the Court to grant him "leave to file a second amended complaint setting forth additional facts regarding his Title VII retaliation claim." (ECF No. 30 at PageID 103.) Rule 15 provides that a court should freely grant leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "If it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." *Brown v. Matauszak*, 415 F. App'x 608, 614 (6th Cir. 2011) (citation omitted).

The Court declines to do so here. Its earlier Order granted Plaintiff leave to amend after noting the specific holes in his Complaint. (*See, e.g.*, ECF No. 16 at PageID 63 ("If Plaintiff could plausibly allege that Defendant retaliated against him based on his EEOC threat, his claim may survive.").) The Court did so even though Plaintiff had not requested that relief. *See Brown*, 415 F. App'x at 614–16 (discussing a district court's discretion to sua sponte grant leave

---

[3] An alternative reason why Plaintiff fails to state a claim is that his pleadings make contradictory statements on this issue. *See Moses v. Weirich*, No. 22-cv-02720-JPM-atc, 2023 WL 8482900, at *6 (W.D. Tenn. Dec. 7, 2023) ("A plaintiff 'pleads [them]self out of court when it would be necessary to contradict the complaint in order to prevail on the merits.'" (quoting *Hiver v. Active Electric, Inc.*, 878 F. Supp. 2d 897, 905 (S.D. Ohio 2012)); *United States ex rel. Maur v. Hage-Korban*, No. 17-1079, 2020 WL 912753, at *6 n.6 (W.D. Tenn. Feb. 25, 2020), *aff'd*, 981 F.3d 516 (6th Cir. 2020). He now claims that his work hours decreased in 2024 but has not otherwise altered his statement that this began when he returned to work in 2021.

to amend before dismissing a pro se complaint). Yet Plaintiff still fails to state a claim despite these efforts. The Court thus concludes that another amendment would be futile. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." (citation omitted)).

## CONCLUSION

For these reasons, the Court **MODIFIES** Judge Claxton's R&R but still finds that Plaintiff fails to plead a retaliation claim. The Court therefore **GRANTS** Defendant's Motion to Dismiss and **DISMISSES** this case **WITH PREJUDICE**.[4]

**SO ORDERED**, this 31st day of August, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

[4] It follows that Plaintiff's Motion to Grant a Jury Trial Based on the Evidence Submitted is **MOOT**.